1
2
3
4
5
6
7
8
9
10

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

11  JERRY PHOTHIKHAM,                    Case No. 13-5619 JC

12                    Plaintiff,
                                        MEMORANDUM OPINION AND
13            v.                        ORDER OF REMAND

14  CAROLYN W. COLVIN, Acting
15  Commissioner of Social Security,

16                    Defendant.

17

18  **I.    SUMMARY**

19        On August 7, 2013, plaintiff Jerry Phothikham ("plaintiff") filed a

20  Complaint seeking review of the Commissioner of Social Security's denial of

21  plaintiff's application for benefits.  The parties have consented to proceed before

22  the undersigned United States Magistrate Judge.

23        This matter is before the Court on the parties' cross motions for summary

24  judgment, respectively ("Plaintiff's Motion") and ("Defendant's Motion").  The

25  Court has taken both motions under submission without oral argument.  See Fed.

26  R. Civ. P. 78; L.R. 7-15; August 13, 2013 Case Management Order ¶ 5.

27  ///

28  ///

1

1    Based on the record as a whole and the applicable law, the decision of the

2  Commissioner is REVERSED AND REMANDED for further proceedings

3  consistent with this Memorandum Opinion and Order of Remand.

4  **II.    BACKGROUND AND SUMMARY OF ADMINISTRATIVE**

5        **DECISION**

6    On August 9, 2011, plaintiff filed applications for Supplemental Security

7  Income and child's insurance benefits.[1]  (Administrative Record ("AR") 12, 198).

8  Plaintiff asserted that he became disabled on February 8, 2008, due to autism,

9  learning disorder, depression, anxiety, short attention span, stress, temper

10  tantrums, asthma, anti-social/anti-interaction behavior.  (AR 12, 254).  The

11  Administrative Law Judge ("ALJ") examined the medical record and heard

12  testimony from plaintiff (who was represented by counsel) and a vocational expert

13  on February 4, 2013.  (AR 34-64).

14    On March 27, 2013, the ALJ determined that plaintiff was not disabled

15  through the date of the decision.  (AR 12-22).  Specifically, the ALJ found:

16  (1) plaintiff suffered from the following severe impairments:  asthma, autism

17  disorder, and generalized anxiety disorder (AR 14); (2) plaintiff's impairments,

18  considered singly or in combination, did not meet or medically equal a listed

19  impairment (AR 14-15); (3) plaintiff retained the residual functional capacity to

20  perform a full range of work at all exertional levels with additional non-exertional

21  limitations[2] (AR 15); (4) plaintiff had no past relevant work (AR 21); (5) there are

22

23

24    [1]A disabled adult whose parent is (or was at the time of death) entitled to Social Security
old age or disability insurance benefits may receive Disabled Adult Child benefits if the claimant

25  can show, among other things, that at the time an application for benefits was filed, the claimant
was unmarried, was dependent on the wage-earning parent, and was "under a disability . . . [that]

26  began before he attained the age of 22. . . ."  42 U.S.C. § 402(d)(1); 20 C.F.R. § 404.350(a); see

27  also Smolen v. Chater, 80 F.3d 1273, 1279-80 (9th Cir. 1996) (citations omitted).

28    [2]The ALJ determined that plaintiff:  (i) could have no concentrated exposure to
pulmonary irritants; (ii) could have no more than occasional contact with the public and peers;
and (iii) was limited to simple, repetitive tasks.  (AR 15).

1   jobs that exist in significant numbers in the national economy that plaintiff could

2   perform, specifically linen room attendant and hand packager (AR 21-22); and

3   (6) plaintiff's allegations regarding his limitations were not entirely credible.  (AR

4   16).

5           The Appeals Council denied plaintiff's application for review.  (AR 1).

6   **III.   APPLICABLE LEGAL STANDARDS**

7           **A.     Sequential Evaluation Process**

8           To qualify for disability benefits, a claimant must show that the claimant is

9   unable "to engage in any substantial gainful activity by reason of any medically

10  determinable physical or mental impairment which can be expected to result in

11  death or which has lasted or can be expected to last for a continuous period of not

12  less than 12 months."  Molina v. Astrue, 674 F.3d 1104, 1110 (9th Cir. 2012)

13  (quoting 42 U.S.C. § 423(d)(1)(A)) (internal quotation marks omitted).  The

14  impairment must render the claimant incapable of performing the work claimant

15  previously performed and incapable of performing any other substantial gainful

16  employment that exists in the national economy.  Tackett v. Apfel, 180 F.3d 1094,

17  1098 (9th Cir. 1999) (citing 42 U.S.C. § 423(d)(2)(A)).

18          In assessing whether a claimant is disabled, an ALJ is to follow a five-step

19  sequential evaluation process:

20          (1)    Is the claimant presently engaged in substantial gainful activity?  If

21                 so, the claimant is not disabled.  If not, proceed to step two.

22          (2)    Is the claimant's alleged impairment sufficiently severe to limit

23                 the claimant's ability to work?  If not, the claimant is not

24                 disabled.  If so, proceed to step three.

25          (3)    Does the claimant's impairment, or combination of

26                 impairments, meet or equal an impairment listed in 20 C.F.R.

27                 Part 404, Subpart P, Appendix 1?  If so, the claimant is

28                 disabled.  If not, proceed to step four.

1      (4)    Does the claimant possess the residual functional capacity to

2              perform claimant's past relevant work?  If so, the claimant is

3              not disabled.  If not, proceed to step five.

4      (5)    Does the claimant's residual functional capacity, when

5              considered with the claimant's age, education, and work

6              experience, allow the claimant to adjust to other work that

7              exists in significant numbers in the national economy?  If so,

8              the claimant is not disabled.  If not, the claimant is disabled.

9  Stout v. Commissioner, Social Security Administration, 454 F.3d 1050, 1052 (9th

10  Cir. 2006) (citing 20 C.F.R. §§ 404.1520, 416.920); see also Molina, 674 F.3d at

11  1110 (same).

12      The claimant has the burden of proof at steps one through four, and the

13  Commissioner has the burden of proof at step five.  Bustamante v. Massanari, 262

14  F.3d 949, 953-54 (9th Cir. 2001) (citing Tackett, 180 F.3d at 1098); see also Burch

15  v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005) (claimant carries initial burden of

16  proving disability).

17     **B.**    **Standard of Review**

18      Pursuant to 42 U.S.C. section 405(g), a court may set aside a denial of

19  benefits only if it is not supported by substantial evidence or if it is based on legal

20  error.  Robbins v. Social Security Administration, 466 F.3d 880, 882 (9th Cir.

21  2006) (citing Flaten v. Secretary of Health & Human Services, 44 F.3d 1453, 1457

22  (9th Cir. 1995)).  Substantial evidence is "such relevant evidence as a reasonable

23  mind might accept as adequate to support a conclusion."  Richardson v. Perales,

24  402 U.S. 389, 401 (1971) (citations and quotations omitted).  It is more than a

25  mere scintilla but less than a preponderance.  Robbins, 466 F.3d at 882 (citing

26  Young v. Sullivan, 911 F.2d 180, 183 (9th Cir. 1990)).

27      To determine whether substantial evidence supports a finding, a court must

28  "'consider the record as a whole, weighing both evidence that supports and

1   evidence that detracts from the [Commissioner's] conclusion.'"  Aukland v.

2   Massanari, 257 F.3d 1033, 1035 (9th Cir. 2001) (quoting Penny v. Sullivan, 2 F.3d

3   953, 956 (9th Cir. 1993)).  If the evidence can reasonably support either affirming

4   or reversing the ALJ's conclusion, a court may not substitute its judgment for that

5   of the ALJ.  Robbins, 466 F.3d at 882 (citing Flaten, 44 F.3d at 1457).

6   **IV.    DISCUSSION**

7          Plaintiff argues that the ALJ failed properly to evaluate the opinions of Dr.

8   Young Chung, plaintiff's treating psychiatrist, and Dr. Donald Gallo, an

9   examining psychologist.  (Plaintiff's Motion at 2-8).  The Court disagrees.

10  Nonetheless, as discussed in detail below, since the record does not contain any

11  other medical opinion which addresses plaintiff's functional abilities, the ALJ's

12  decision is not supported by substantial evidence.  Since the Court cannot find that

13  the ALJ's error was harmless, a remand is warranted.

14         **A.    Pertinent Law**

15         In Social Security cases, courts employ a hierarchy of deference to medical

16  opinions depending on the nature of the services provided.  Courts distinguish

17  among the opinions of three types of physicians:  those who treat the claimant

18  ("treating physicians") and two categories of "nontreating physicians," namely

19  those who examine but do not treat the claimant ("examining physicians") and

20  those who neither examine nor treat the claimant ("nonexamining physicians").

21  Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1996) (footnote reference omitted).  A

22  treating physician's opinion is entitled to more weight than an examining

23  physician's opinion, and an examining physician's opinion is entitled to more

24  weight than a nonexamining physician's opinion.[3]  See id.  In general, the opinion

25

26  _____

27         [3]Cf. Le v. Astrue, 529 F.3d 1200, 1201-02 (9th Cir. 2008) (not necessary or practical to
    draw bright line distinguishing treating physicians from non-treating physicians; relationship is

28  better viewed as series of points on a continuum reflecting the duration of the treatment
    relationship and frequency and nature of the contact) (citation omitted).

1   of a treating physician is entitled to greater weight than that of a non-treating

2   physician because the treating physician "is employed to cure and has a greater

3   opportunity to know and observe the patient as an individual." Morgan v.

4   Commissioner of Social Security Administration, 169 F.3d 595, 600 (9th Cir.

5   1999) (citing Sprague v. Bowen, 812 F.2d 1226, 1230 (9th Cir. 1987)).

6        The treating physician's opinion is not, however, necessarily conclusive as

7   to either a physical condition or the ultimate issue of disability. Magallanes v.

8   Bowen, 881 F.2d 747, 751 (9th Cir. 1989) (citing Rodriguez v. Bowen, 876 F.2d

9   759, 761-62 & n.7 (9th Cir. 1989)). Where a treating physician's opinion is not

10  contradicted by another doctor, it may be rejected only for clear and convincing

11  reasons. Orn v. Astrue, 495 F.3d 625, 632 (9th Cir. 2007) (citation and internal

12  quotations omitted). The ALJ can reject the opinion of a treating physician in

13  favor of another conflicting medical opinion, if the ALJ makes findings setting

14  forth specific, legitimate reasons for doing so that are based on substantial

15  evidence in the record. Id. (citation and internal quotations omitted); Thomas v.

16  Barnhart, 278 F.3d 947, 957 (9th Cir. 2002) (ALJ can meet burden by setting out

17  detailed and thorough summary of facts and conflicting clinical evidence, stating

18  his interpretation thereof, and making findings) (citations and quotations omitted);

19  Magallanes, 881 F.2d at 751, 755 (same; ALJ need not recite "magic words" to

20  reject a treating physician opinion – court may draw specific and legitimate

21  inferences from ALJ's opinion). "The ALJ must do more than offer his

22  conclusions." Embrey v. Bowen, 849 F.2d 418, 421-22 (9th Cir. 1988). "He must

23  set forth his own interpretations and explain why they, rather than the

24  [physician's], are correct." Id. "Broad and vague" reasons for rejecting the

25  treating physician's opinion do not suffice. McAllister v. Sullivan, 888 F.2d 599,

26  602 (9th Cir. 1989).

27  ///

28  ///

1    **B.      The ALJ Properly Rejected the Opinions of the Treating**

2    **Psychiatrist and Examining Psychologist**

3          **1.      Dr. Young Chung**

4          Plaintiff contends that the ALJ improperly rejected the opinions expressed

5    by Dr. Chung in a June 15, 2011 Medical Source Statement of Ability to Do

6    Work-Related Activities (Mental)[4] (*i.e.*, that plaintiff was extremely limited in

7    almost all mental functioning) ("Dr. Chung's Opinions").  (Plaintiff's Motion at

8    3-8).  The Court disagrees.

9          As the ALJ noted, Dr. Chung's Opinions conflict with the physician's own

10   notes and recorded observations of plaintiff.  In his initial evaluation of plaintiff,

11   Dr. Chung found that (1) plaintiff's attire, grooming, and hygiene appeared good,

12   his eye contact was appropriate, his behavior/manner was normal and cooperative,

13   and his affect was within normal range with congruent mood; (2) plaintiff's speech

14   was slow and low-toned, but goal directed, his thought processes were coherent,

15   relevant and logical, and plaintiff was alert and oriented to person, place, time and

16   situation; and (3) plaintiff's memory and concentration appeared normal and his

17   insight and judgment were unimpaired.  (AR 17) (citing Exhibit 2F at 13-14 [AR

18

19   _____

20         [4]In the Medical Source Statement of Ability to Do Work-Related Activities (Mental), Dr.
     Chung opined that plaintiff had (i) moderate restrictions in his ability to understand and
21   remember short, simple instructions; (ii) marked restrictions in his abilities to carry out short,
     simple instructions and to interact appropriately with supervisors; (iii) extreme restrictions in his
22   abilities to understand, remember and carry out detailed instructions, to make judgements on
     simple work-related decisions, to interact appropriately with the public and co-workers, and to
23   respond appropriately to work pressures and changes in a routine work setting; and (iv) a short
24   attention span.  (AR 573-74).  Dr. Chung also noted medical/clinical findings that assertedly
     supported the foregoing opinions, specifically that plaintiff:  (i) had "[e]xtreme difficulty
25   interacting socially with others, difficulty [] adjust[ing] to any changes," and "anger causing
     damage to propert[y]"; (ii) would "keep[] self withdrawn from coworkers or supervisors";
26   (iii) would demand "inappropriate job assignments which [were] not qualified for him"; (iv) had
     a "short attention span esp[ecially] in the area of activities he is not interested [sic]"; (v) wanted
27   to leave early from work or assignment"; and (vi) would easily anger when expected to do
28   chores.  (AR 573-74).

553-54].  Dr. Chung recommended only limited follow up visits for plaintiff.  (AR 544, 546, 547, 548-49, 549-50, 551-52, 553-54 [return in approximately 2 months]; AR 542, 595 [return in 2-3 months]; AR 590 [return 3-4 months]; AR 581 [return in 6 months]).  Dr. Chung's mental status evaluations of plaintiff only noted "anxious" mood, at times with "flat" affect, and on one visit "unpredictable" judgement, but otherwise reflected that plaintiff was alert and oriented times four with no psychosis.  (AR 544, 545, 547-48, 550, 551, 553-54).  On one visit plaintiff complained of "poor attention span with some impulsivity" but declined medication to treat the symptoms.  (AR 550).  Plaintiff otherwise was noted to be doing well on his medication.  (AR 545 [2/4/11 treatment note: "doing OK" on Celexa, mother stated "overall [plaintiff] is all right"]; AR 546-47 [10/19/10 treatment note: Celexa helps with anxiety with no side effects]; AR 551 [10/29/09 treatment note: Celexa "helps [plaintiff] a lot," mother "reported [] improvement"]).  Plaintiff regularly reported to Dr. Chung about his college classes.  (AR 544 [plaintiff "proud of his college graduation"]; AR 546 [majoring in acting and graphic design]; AR 548 ["still working [on college] degree"]; AR 551 [taking five classes including P.E. and photography]; AR 553 [ "college student"]; AR 556 ["attends Pierce College"]).  Plaintiff also told Dr. Chung that he worked part time while in college and full time upon graduation (AR 542, 553, 556, 580, 589, 594), that he traveled (AR 557), and that he enjoyed golf and swimming (AR 551, 581).  In fact, as the ALJ pointed out, Dr. Chung encouraged plaintiff to continue to pursue his work, school and other activities.  (AR 19; AR 544, 546-47, 550, 552 ["continue school," "continue college," "structured activities with exercise and hobbies"]; AR 554 ["continue college and [] part time work"]; AR 581 ["continue vocational training and the job"]; AR 595 ["continue [full time] work" and "exercise regularly"]).

As the ALJ noted, the forgoing is entirely inconsistent with Dr. Chung's findings that plaintiff essentially had "no useful ability to function" as to almost all

1   mental abilities.  (AR 19-20).  Therefore, the ALJ properly rejected Dr. Chung's

2   Opinions for clear and convincing reasons.  See Bayliss v. Barnhart, 427 F.3d

3   1211, 1216 (9th Cir. 2005) (A discrepancy between a physician's notes and

4   recorded observations and opinions and the physician's assessment of limitations

5   is a clear and convincing reason for rejecting the opinion.); see also Connett v.

6   Barnhart, 340 F.3d 871, 875 (9th Cir. 2003) (affirming ALJ's rejection of

7   physician's opinion as unsupported by physician's treatment notes); cf.

8   Tonapetyan v. Halter, 242 F.3d 1144, 1149 (9th Cir. 2001) (an ALJ need not

9   accept a treating physician's opinions that are conclusory and brief, or

10  unsupported by clinical findings or physician's own treatment notes).

11               **2.       Dr. Donald P. Gallo**

12        Plaintiff contends that the ALJ improperly rejected the opinions expressed

13  by Dr. Gallo in a September 24, 2011 Consultation Report (*i.e.*, that plaintiff

14  essentially had profound adaptive behavior deficits)[5] ("Dr. Gallo's Opinions").

15  (Plaintiff's Motion at 5-8) (citing AR 570-72).  The Court disagrees.

16        Here, the ALJ gave "no weight" to Dr. Gallo's Opinions because they

17  "[were] based entirely on [plaintiff's] family's subjective claims which . . . [were]

18  wholly inconsistent with [plaintiff's] actual functional capacity as evidenced by

19  [plaintiff's] own statements and the objective treatment record."  The ALJ

20  properly rejected Dr. Gallo's Opinions on this basis.  See, e.g., Bayliss, 427 F.3d

21  

22        [5]Based on his examination of plaintiff, discussions with plaintiff's mother and sister, and
    the results of psychological testing (which was derived from responses provided by plaintiff's
23  mother and sister), Dr. Gallo opined, in pertinent part, that (i) plaintiff was "functioning
    significantly below what would be expected of an adult his age;" (ii) plaintiff's "two greatest
24  areas of deficit, communication and socialization, also happen to be the areas most commonly
    affected in individuals with autism spectrum disorders"; (iii) plaintiff's "community skills" were
25  "approximately seven years delayed"; (iv) "[plaintiff's] interpersonal relationships and receptive
    language skills [were] approximately twenty years delayed" which resulted in plaintiff
26  "functioning at a preschool level"; and (v) plaintiff's significant mental deficit was "quite
    staggering" in light of plaintiff's graduation from college, and "clearly indicate[d] [plaintiff was]
27  in continued need for extensive Regional Center services."  (AR 570-72).

28

1  at 1217 (ALJ properly rejected opinion of treating physician which was based

2  solely on subjective complaints of claimant and information submitted by

3  claimant's family and friends); see also Ukolov v. Barnhart, 420 F.3d 1002,

4  1004-05 (9th Cir. 2005) (Plaintiff has the burden to present evidence of medical

5  signs, symptoms and laboratory findings that establish a medically determinable

6  physical or mental impairment that is severe.) (citing 42 U.S.C. §§ 423(d)(3),

7  1382c(a)(3)(D)); see id. at 1005 ("[U]nder no circumstances may the existence of

8  an impairment be established on the basis of symptoms alone.") (citation omitted);

9  Social Security Ruling 96-4p at *1-2 ("[R]egardless of how many symptoms an

10  individual alleges, or how genuine the individual's complaints may appear to be,

11  the existence of a medically determinable physical or mental impairment cannot be

12  established in the absence of objective medical abnormalities; i.e., medical signs

13  and laboratory findings.").

14      **C.**    **The Medical Opinion Evidence is Insufficient to Support the**

15           **ALJ's Non-Disability Determination**

16       In light of the foregoing, the remaining medical evidence in the record is

17  insufficient to support the ALJ's non-disability determination.  Specifically, the

18  ALJ rejected the only medical opinions addressing the extent to which plaintiff's

19  mental impairments impacted his functional abilities.  Therefore, it appears that

20  the ALJ's findings – including his determination that plaintiff retained the residual

21  functional capacity to perform "simple, repetitive tasks" – were based solely on

22  the ALJ's own lay interpretation of plaintiff's treatment records, which could not

23  serve as substantial evidence supporting the ALJ's decision.  See Winters v.

24  Barnhart, 2003 WL 22384784, at *6 (N.D. Cal. Oct. 15, 2003) ("The ALJ is not

25  allowed to use his own medical judgment in lieu of that of a medical expert."); see

26  also Gonzalez Perez v. Secretary of Health & Human Services, 812 F.2d 747, 749

27  (1st Cir. 1987) (ALJ may not "substitute his own layman's opinion for the findings

28  and opinion of a physician"); Ferguson v. Schweiker, 765 F.2d 31, 37 (3d Cir.

1   1985) (ALJ may not substitute his interpretation of laboratory reports for that of a

2   physician).  To the extent the ALJ found the opinions of Drs. Chung and Gallo

3   ambiguous or otherwise inadequate, the ALJ should have contacted one or both

4   doctors to resolve any perceived conflict, had a different physician examine

5   plaintiff to assess his mental abilities or called a medical expert to assist in

6   determining the extent to which the medical records reflected any limitation on

7   plaintiff's ability to work.  See Mayes v. Massanari, 276 F.3d 453, 459-60 (9th

8   Cir. 2001) (citation omitted) (Although plaintiff bears the burden of proving

9   disability, the ALJ has an affirmative duty to assist the claimant in developing the

10  record "when there is ambiguous evidence or when the record is inadequate to

11  allow for proper evaluation of the evidence."); see, e.g., Ferguson, 765 F.2d at 37

12  (Where record contained no contrary medical opinion, "if the ALJ believed that

13  [treating physician's] reports were conclusory or unclear, it was incumbent upon

14  the ALJ to secure additional evidence from another physician"); Neydavoud v.

15  Astrue, 830 F. Supp. 2d 907, 912-13 (C.D. Cal. 2011) (remand warranted where

16  ALJ rejected the only record medical opinions addressing the extent to which

17  plaintiff's impairments impacted his ability to work and ALJ failed to re-contact

18  treating physicians or obtain opinion from another physician).

19      Since the ALJ's residual functional capacity assessment is predicated, at

20  least in part, on conclusions that lack substantial evidence, the Court cannot find

21  the ALJ's error to be harmless.

22      Accordingly, a remand is warranted to permit the ALJ properly to consider

23  the medical opinion evidence.

24  ///

25  ///

26  ///

27  ///

28  ///

11

1  **V.     CONCLUSION**[6]

2         For the foregoing reasons, the decision of the Commissioner of Social

3  Security is reversed in part, and this matter is remanded for further administrative

4  action consistent with this Opinion.[7]

5         LET JUDGMENT BE ENTERED ACCORDINGLY.

6  DATED:   January 30, 2014

7                                                          _____/s/_____

8                                                          Honorable Jacqueline Chooljian
                                                           UNITED STATES MAGISTRATE JUDGE
9

10

11

12

13

14

15

16

17

18

19

20

21

22

23      [6]The Court need not, and has not adjudicated plaintiff's other challenges to the ALJ's
    decision, except insofar as to determine that a reversal and remand for immediate payment of
24  benefits would not be appropriate.

25      [7]When a court reverses an administrative determination, "the proper course, except in rare
    circumstances, is to remand to the agency for additional investigation or explanation."
26  Immigration & Naturalization Service v. Ventura, 537 U.S. 12, 16 (2002) (citations and
    quotations omitted).  Remand is proper where, as here, additional administrative proceedings
27  could remedy the defects in the decision.  McAllister v. Sullivan, 888 F.2d 599, 603 (9th Cir.
    1989).
28